# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., a minor, by and through his guardian ad litem JOSE LUIS RODRIGUEZ, NORA MORELOS, and YAKIRA MORELOS,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS and DOES 1 through 50, inclusive,<br><br>Defendants. | 1:18-cv-01034-LJO-SAB<br><br>MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS<br><br>(ECF No. 5) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

1

Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

This case concerns Plaintiffs' claims arising under 42 U.S.C. § 1983. Defendant County of Stanislaus filed the instant motion to dismiss on August 23, 2018. ECF No. 5. Plaintiffs filed an opposition on September 6, 2018. ECF No. 10. On September 18, 2018, Defendant filed an opposition. ECF No. 11. Pursuant to Local Rule 230(g), the Court determined that this matter was suitable for decision on the papers and took it under submission on September 19, 2018. ECF No. 12. For the following reasons, Defendant's motion to dismiss is DENIED.

## III. **BACKGROUND**

At around 3 a.m. on March 4, 2018, Plaintiff J.M., a minor, was having an LSD-related medical crisis at his home in Patterson, California. ECF No. 1 ¶¶ 14-15. Plaintiff Nora Morelos, J.M.'s mother, attempted to calm J.M. down by reading to him from the Bible, but was unsuccessful and called 911 for an ambulance. *Id*. ¶ 15. Ms. Morelos explained on the phone to the dispatcher and again when the paramedics arrived that J.M was having a crisis from the LSD but was not armed or violent. *Id*. ¶ 16. The paramedics told Ms. Morelos that they could not treat J.M. until the police cleared them. *Id*. ¶ 17.

Five or six Stanislaus County Sheriff's Deputies arrived at the house and Ms. Morelos led them to J.M.'s room, explaining that J.M. was not violent and asking them not to hurt him. *Id*. ¶ 18. At that time J.M. was yelling and reading Bible verses aloud while writing them down. *Id*. Ms. Morelos began taking photos and videos because she was scared by the number of deputies present, and was ordered to stop recording and to exit the house. *Id*. Ms. Morelos complied, and waited outside the house along with other family members including J.M.'s sister, Plaintiff Yakira Morelos. *Id*. A deputy entered the house with a less-than-lethal rifle, and Ms. Morelos again asked that the deputy not hurt J.M. and repeated that

he was harmless. *Id*.

Shortly thereafter, the family heard officers yelling and a gun repeatedly being fired. *Id*. ¶ 19. Ms. Morelos began crying as she believed J.M. had been shot. *Id*. The deputies exited the house in a group, did not respond to Ms. Morelos's questions about J.M.'s condition, and told the paramedics to leave. *Id*. The deputies and paramedics left without further assessing J.M.'s condition. *Id*.

Ms. Morelos and Yakira Morelos went up to J.M.'s room to check on him. *Id*. ¶ 20. They found J.M. curled on the floor with large bruises on his body, a swollen face, and several marks from what appeared to be baton strikes. *Id*. J.M. was conscious and frightened, and his family took him to Emanuel Medical Center for treatment. *Id*. ¶ 21. His injuries were too severe for the medical staff to treat, and J.M. was transferred to U.C. Davis Medical Center, where his blunt force injuries were treated. *Id*. J.M. remained in the hospital for several days. *Id*. J.M. later said that he had been pepper sprayed, beaten while on the ground, and shot multiple times with a less than lethal rifle, but had never threatened the deputies. *Id*. ¶ 20. J.M. was never cited for any crime or violation by the deputies, and no criminal charges were filed against him. *Id*. ¶ 19. Ms. Morelos requested police reports related to the incident, but no reports were provided to her. *Id*. ¶ 22. Plaintiffs' counsel also requested and was not given police reports of the incident. *Id*.

Plaintiffs bring claims under 42 U.S.C. § 1983 for excessive force and unlawful detention in violation of the Fourth Amendment, and for *Monell* liability based on an unconstitutional custom or policy. *Id*. ¶¶ 25-41. Additionally, Plaintiffs assert claims for violation of California's Bane Act, assault and battery, negligence, and negligent infliction of emotional distress. *Id*. ¶¶ 42-63. Defendant moves to dismiss Plaintiffs' *Monell* claim against the County of Stanislaus and what Defendant characterizes as a § 1983 supervisory liability claim "wedged within" the *Monell* claim. ECF No. 5-1 at 1-2.

## IV. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To overcome a Rule 12(b)(6) challenge, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Id.* at 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562. To the extent that any defect in the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

# V. ANALYSIS

**A.    42 U.S.C. § 1983 and *Monell***

The Civil Rights Act ("§ 1983") provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To succeed in asserting a § 1983 claim, a plaintiff must demonstrate that the defendant's actions (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

As a rule, "a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978). Under *Monell*, however, a municipality may be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts represent official policy. *Id*. at 694. In order to establish liability in a *Monell* claim, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).

A policy or custom may be shown under *Monell* by establishing the existence of: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) the decision of a

decision-making official who was, as a matter of state law, a final policymaking authority and whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *See Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). A policy is "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). A custom is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). However, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [municipality] and the opportunity to conform to constitutional dictates.'" *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011).

Additionally, a municipal defendant is liable only where the municipality's policies or customs "evince a 'deliberate indifference' to the constitutional right and are the 'moving force' behind the constitutional violation." *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010). Deliberate indifference exists "when the need for more or different action 'is so obvious, and the

6

inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). To show that a policy or custom is the "moving force" behind a violation, a plaintiff must allege facts proving that the policy or custom was "closely related to the ultimate injury," *City of Canton*, 489 U.S. at 391, that is, the constitutional violation was caused by the municipal policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

**B.     The *Monell* Pleading Standard**

Plaintiffs argue that a relaxed pleading standard applies to *Monell* claims involving allegations based on information and belief where facts showing a causal connection between policies, customs, or practices and the harm are not available to the pleading party before discovery, citing unpublished district court cases. ECF No. 10 at 5. Defendant responds that Plaintiffs' argument regarding a relaxed pleading standard was foreclosed by the Ninth Circuit in *A.E. v. County of Tulare*, 666 F.3d. 631 (9th Cir. 2012). ECF No. 11 at 2-3.

In *A.E.*, the Ninth Circuit clarified existing circuit precedent and held that the pleading standard articulated in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), extends to *Monell* claims. *A.E.*, 666 F.3d at 637. Under *A.E.*, therefore, a plaintiff asserting a *Monell* claim, including a claim based on a policy, practice, or custom, must contain sufficiently detailed factual allegations "to give fair notice and to enable the opposing party to defend itself effectively" and which "plausibly suggest an entitlement to relief." *Starr*, 652 F.3d at 1216. In the cases cited by Plaintiffs as supporting a relaxed pleading standard, which are all unpublished district court decisions, allegations based on "information and belief" were found to state a cognizable claim where specific facts regarding policies, customs, and practices were in the exclusive possession of the defendants. *See* ECF No. 10 at 5 (citing *Wilson v. Town of Danville*, Case No. 17-cv-00863-DMR, 2017 WL 2335545 (N.D. Cal. May 30, 2017), *A.C. v. Griego*, No. 2:16-cv-00746-JAM-CKD, 2016 WL 5930592 (E.D. Cal. Oct. 12, 2016), *Estate of Duran v. Chavez*, No.

7

2:14-cv-02048-TLN-CKD (E.D. Cal. Dec. 7, 2015), and *Phillips v. Cty. of Fresno*, No. 1:13-cv-0538 AWI BAM, 2013 WL 6243278 (E.D. Cal. Dec. 3, 2013)).

While, as Plaintiffs argue, some courts have applied a relaxed pleading standard in *Monell* contexts, this approach has not been unanimously followed in the Eastern District of California, or by other courts within the Ninth Circuit. *See*, *e.g.*, *Jack v. Cty. of Stanislaus*, Case No. 1:17-CV-0520 AWI SAB, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15, 2017); *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 WL 1650563, at *2 (N.D. Cal. May 2, 2017); *McDaniels v. Cty. of San Joaquin*, CIV. NO. 2:16-2007 WBS DB, 2017 WL 915356, at *3 (E.D. Cal. Mar. 7, 2017). The Court agrees with the reasoning in these cases that *A.E.* requires a plaintiff to meet the *Starr* pleading standard, itself derived from the general standard set out in *Twombly* and *Iqbal*. The cases cited by Plaintiffs do not justify the imposition of a relaxed pleading standard in the face of binding Circuit precedent to the contrary. While Plaintiffs need not meet any heightened pleading standard to assert a § 1983 claim, they must plead "facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). Plaintiffs can do so by specifying "the content of the policies, customs, or practices the execution of which gave rise to [the plaintiff's] constitutional injuries." *Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 900 (N.D. Cal. 2013).

**C.     Policy or Custom**

Defendant argues that the complaint does not allege sufficient facts regarding the existence of a policy or custom to sustain a *Monell* claim. ECF No. 5-1 at 4. Specifically, Defendant asserts that the allegations in Plaintiffs' complaint are repetitive and not specific to the facts of this case, and are at best conclusory allegations not supported by any facts that an unspecified policy or custom exists. *Id*. at 4-5. Additionally, Defendant contends, Plaintiffs' allegations do not show that the County of Stanislaus adhered to a policy or custom with deliberate indifference to Plaintiffs' rights. *Id*. at 5-6.

Here, Plaintiffs allege that Deputies in the Stanislaus County Sheriff's office have been involved in several recent incidents involving the use of excessive force which show the existence of a policy or

custom which caused the March 4 incident. The specific events are: a November 2017 incident where deputies were recorded repeatedly punching a handcuffed man in the back of the head and back; a February 2017 incident where a deputy was filmed shooting and killing a woman driving away from deputies, resulting in the deputy being charged with voluntary manslaughter; a May 29, 2018, incident where deputies shot and killed a man retrieving belongings from a house from which he had been evicted; and the May 30, 2018, death of an individual in custody after deputies allegedly used excessive force. ECF No. 1 ¶ 32. None of these incidents closely matches the fact pattern of the events alleged here, but Plaintiffs argue that, as a general matter, the County of Stanislaus has failed to adequately respond to incidents of excessive force, and thereby authorized continuing abuses, and failed to train officers in the appropriate use of force. *Id*. ¶¶ 33-41. Additionally, Plaintiffs set out specific policies and customs which they allege gave rise to their constitutional injuries. *Id*. ¶ 36.

Plaintiffs' complaint identifies the policies, customs, or practices (i.e. failure to discipline, investigate, train or retrain, permitting the filing of incomplete or false reports, encouraging a code of silence and the abuse of police authority) which led to the harm alleged. The complaint alleges that the existence of those policies or customs can be inferred from prior incidents as well as the March 4 incident. ECF No. 1 ¶ 35. Plaintiffs' position is that the lack of response from Defendant to the prior incidents is a sufficient basis from which to infer that Defendant has a policy, custom, or practice of acquiescing to the use of excessive force by Stanislaus County deputies. ECF No. 10 at 7-8. The complaint also alleges that Defendant was aware, through prior incidents, that the aforementioned failures to train and discipline posed a risk of further excessive force incidents, and that Defendant was deliberately indifferent to that risk. ECF No. 1 ¶¶ 34, 37. "[E]vidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded" can be sufficient to support a finding of municipal policy. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). The practice must, however, be "of sufficient duration, frequency and consistency to constitute an actionable policy." *Trevino*, 99 F.3d at 920.

9

As this Court has observed, "[t]he line between 'isolated or sporadic incidents' and 'persistent and widespread conduct' is not clearly delineated." *Warkentine v. Soria*, No. 1:13-cv-01550-LJO-MJS, 2104 WL 2093656, at *6 (E.D. Cal. May 19, 2014). The Ninth Circuit has concluded that two unconstitutional assaults by county officials occurring three months apart is not sufficient to show a custom or practice. *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988); *see also Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1203 (W.D. Wash. 2008) ("[A]bsent additional proof, the mere existence of one or two incidents of unconstitutional conduct is insufficient to make out a 'pattern or practice' or 'policy and custom' claim under § 1983."). On the other hand, the Ninth Circuit has also held that five incidents occurring on the same day could permit the inference of a policy of suppressing political speech. *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005). Moreover, the Supreme Court has specifically declined to conclude that a single incident could never trigger municipal liability. *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409. Other courts have concluded that a policy may be inferred from the conduct of a municipality after an incident when no steps are taken to reprimand or otherwise take action in response to egregious conduct. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (citing *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985)). The "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy," and where there is no indication that the municipality took any action, besides attempting to avoid liability, in response to dangerous conduct, it is reasonable to infer that such conduct is in accordance with a policy. *Grandstaff*, 767 F.2d at 171. Perhaps the most that can be said is that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality.

The incidents described in the complaint are multiple, specific events in which significant force was utilized by Stanislaus County deputies in situations where the force used may plausibly be said to have been excessive. Additionally, Plaintiffs have alleged that the incidents occurred without any

disciplining or retraining of the deputies involved. The incidents are described with sufficient detail to put Defendant on notice of the alleged policy connecting them. *Cf. Bagley v. City of Sunnyvale*, Case No. 16-cv-02250-JSC, 2017 WL 5068567, at *6 (N.D. Cal. Nov. 3, 2017) (dismissing *Monell* excessive force claim alleging a policy based on two "vaguely described" prior incidents). Additionally, the incidents all occurred within 13 months of the incident involving J.M. The fact that the alleged incidents do not include findings by a competent court that deputies used unconstitutional levels of force is not dispositive, contrary to Defendant's suggestion. *See* ECF No. 11 at 3. Whether the prior incidents did involve misuses of force and establish that alleged custom, policy, or practice exists is a question of fact, and Plaintiffs have offered enough detail to plausibly state a claim at this stage in the proceedings. Assuming the truth of Plaintiffs' allegations, as the Court must when deciding a motion to dismiss, it is plausible that Defendant had a custom or policy which was the moving force behind the use of excessive force against J.M. on March 4, 2018.

### D. Deliberate Indifference

Defendant also argues that the complaint does not allege that any policy or custom was adhered to with deliberate indifference by the County of Stanislaus. ECF No. 5-1 at 6-7. On the contrary, Plaintiffs adequately allege that Defendant was aware of the existence of the customs or policies referenced in the complaint and of the likelihood that actions under such policies would likely violate constitutional rights. Plaintiffs specifically and plausibly allege that Defendant was aware of the risks posed by the policies and customs in place, and that the failure to modify them amounts to deliberate indifference. ECF No. 1 ¶ 37. Municipal deliberate indifference in a *Monell* claim is based on an objective standard. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). To plead deliberate indifference, a plaintiff need only "establish that the facts available to [] policymakers put them on actual or constructive notice that the particular omission [or action] is substantially certain to result in" constitutional violations. *Id*. Plaintiffs' allegations regarding prior incidents and policies and customs are sufficiently detailed to establish that Defendant was on notice of the likelihood to

constitutional violations and therefore establish deliberate indifference under *Monell*.

**E.     Supervisory Liability**

Plaintiffs also allege that Defendant supervised the deputies who assaulted J.M., and are liable for failing to prevent the assault. Defendant argues that this claim should be dismissed because Plaintiffs fail to sufficiently allege that any County of Stanislaus officials knew or should have known about, or ratified, the March 4 incident with deliberate indifference or that officials were deliberately indifferent in failing to supervise any deputies. ECF No. 5-1 at 6. Plaintiffs argue that the public nature of the prior incidents of excessive force alleged in the complaint permit the inference that supervisory officials of the County of Stanislaus were aware of the incidents but failed to take actions to prevent the beating of J.M. ECF No. 10 at 8.

Under § 1983, supervisory officers are not liable for the actions of subordinates on any theory of vicarious liability, and any liability must be based on the actions of the supervisor, either through personal involvement or through the implementation of a policy, practice, or custom "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)). "The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633. As the Supreme Court held in *Iqbal*, a plaintiff must plead that each official defendant, through the official's own individual actions, has violated the Constitution. 556 U.S. at 676.

Here, no individual supervisory defendants have been identified. To the extent that Plaintiffs allege the County of Stanislaus is subject to supervisory liability based on its implementation of its own policies, that claim is duplicative of the *Monell* claim already addressed. Counties are not subject to supervisory liability under § 1983 except as stated in *Monell*, as explained above, and therefore any theory of supervisory liability is cognizable as to the County of Stanislaus only insofar as it meets the criteria for a

*Monell* claim. As to the liability of unnamed Doe Defendants, those Defendants have not appeared in this action. Additionally, Plaintiffs' allegations indicate that there has been some effort to ascertain the identities of the deputies and officials, including supervisors, involved with this incident but that such efforts were unsuccessful. *See* ECF No. 1 ¶ 22 (alleging that Ms. Morelos and Plaintiffs' counsel both were denied copies of police reports related to the March 4 incident). The Court accordingly declines to rule on the validity of claims against such Defendants at this stage in the proceedings. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (where the identities of alleged defendants are not known prior to filing, dismissal without an opportunity to identify the unknown defendants is improper).

## VI. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: __November 6, 2018__         _____/s/ Lawrence J. O'Neill_____
                                    UNITED STATES CHIEF DISTRICT JUDGE