# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., et al., | Case No. 1:18-cv-01034-LJO-SAB |
| Plaintiffs, | ORDER GRANTING MOTION TO REOPEN DISCOVERY FOR PURPOSE OF CONDUCTING MENTAL EXAMINATION |
| v. | |
| COUNTY OF STANISLAUS, | ORDER GRANTING MOTION REQUIRING PLAINTIFF JEDIDIAH MORELOS TO APPEAR FOR MENTAL EXAMINATION |
| Defendant. | |
| | ORDER DENYING PLAINTIFFS' MOTION TO STRIKE |
| | ORDER VACATING DECEMBER 18, 2019 HEARING |
| | ORDER DIRECTING THE CLERK OF THE COURT TO CHANGE PARTY NAME |
| | (ECF Nos. 46, 47, 48, 50, 51, 52, 53) |

## I.

## INTRODUCTION

Currently before the Court are Defendants' motion for leave to reopen discovery for the limited purpose of conducting a mental examination, Defendants' motion for an order requiring Plaintiff Jedidiah Morelos[1] ("Mr. Morelos") to appear for a mental examination pursuant to

---

[1]  On December 10, 2019, Plaintiffs filed a second amended complaint which named Jedidiah Morelos as the plaintiff in this action who was previously identified as J.M. due to his minority status, and which removed previous references to his guardian ad litem.  (ECF No. 50.)  The Court shall direct the Clerk of the Court to change the name

1

Federal Rule of Civil Procedure 35, and Plaintiffs' motion to strike. (ECF Nos. 46, 47, 52.) The Court, having reviewed the record, finds the motions to be suitable for decision without oral argument. <u>See</u> Local Rule 230(g). Accordingly, the previously scheduled hearing set on December 18, 2019, will be vacated and the parties will not be required to appear at that time.

## II.

## BACKGROUND

### A.    Complaint Allegations

This action was filed on August 1, 2018, and is proceeding on Plaintiffs' second amended complaint filed on December 10, 2019. (ECF Nos. 1, 50.) Plaintiffs bring claims stemming from an incident on March 4, 2018, when Plaintiff Nora Morelos dialed 9-1-1 and requested an ambulance to take her son Jedidiah Morelos, a minor at the time, to the hospital after she learned he had ingested the drug LSD. (ECF Nos. 48, 50.) The fire department and EMTs requested deputies to intervene after Mr. Morelos had slammed the bedroom door on them. (<u>Id.</u>) Mr. Morelos then threatened to harm himself with a pencil, and the deputies pepper sprayed him. (<u>Id.</u>) When Mr. Morelos then started to stab himself with the pencil, a deputy shot him with a bean bag gun. (<u>Id.</u>) Mr. Morelos also allegedly made suicidal comments, culminating in advancing towards the deputies and asking them to shoot him. (<u>Id.</u>) Mr. Morelos was then apparently subdued and struck with a baton by the deputies. (<u>Id.</u>) The deputies allegedly left the premises without telling family members what occurred, and the family members found Mr. Morelos crying on the ground and then took him to the hospital to treat injuries where he was hospitalized for several days. (<u>Id.</u>) Mr. Morelos apparently suffered serious emotional distress, began attending therapy, and was diagnosed with post-traumatic stress disorder ("PTSD"). (ECF No. 48 at 8.) Defendants state that Mr. Morelos only suffered minor injuries, the most significant being bruises on the leg, and has fully recovered from the injuries. (ECF No. 46 at 5.) Plaintiffs have brought a civil rights complaint pursuant to 42 U.S.C. § 1983, in addition to various causes of action relating to what Plaintiffs allege to be excessive force employed by the

---

of Plaintiff J.M. to Jedidiah Morelos and remove the reference to a guardian ad litem from the docket to reflect these changes within the second amended complaint.

Defendants.

**B. Procedural History**

On December 21, 2018, the Court issued a scheduling order setting the following deadlines: (1) a non-expert discovery cutoff of November 4, 2019; (2) a dispositive motion filing deadline of December 18, 2019; and (3) a trial date set for May 5, 2020. (ECF No. 21.) On October 31, 2019, pursuant to the stipulation of the parties, the Court modified the scheduling order by: (1) extending the deadline for disclosure of expert witnesses and reports to November 13, 2019; (2) extending the deadline for disclosure of supplemental expert witnesses and reports to December 11, 2019; and (3) extending the deadline for completion of all expert discovery to January 17, 2020. (ECF No. 36.)

On November 25, 2019, Defendants filed an *ex parte* application to shorten the time for the Court to hear a motion to reopen discovery and a motion requiring Plaintiff Jedidiah Morelos to appear for a mental examination. (ECF No. 44.) On November 26, 2019, the Court granted the *ex parte* application and ordered Defendants to file the motions, set a hearing on the motions to occur on December 18, 2019, and ordered that any opposition be filed on or before December 6, 2019, and any reply brief to be filed on or before December 11, 2019. (ECF No. 45.) On November 26, 2019, Defendants filed the motion for leave to reopen discovery for the limited purpose of conducting a mental examination, and the motion for order requiring Plaintiff Jedidiah Morelos to appear for a mental examination pursuant to Federal Rule of Civil Procedure 35. (Defs.' Mot. Reopen Discovery ("Mot. Reopen"), ECF No. 46; Defs.' Mot. Order Requiring Plaintiff Appear Mental Examination ("Mot. Exam"), ECF No. 47.) On December 6, 2019, Plaintiffs filed an opposition to both motions. (Pls.' Opp'n Defs.' Mots. ("Opp'n"), ECF No. 48.) On December 11, 2019, Defendants filed a reply brief. (Defs.' Reply to Pls.' Opp'n ("Reply"), ECF No. 51.) On December 12, 2019, Plaintiffs filed objections and a counter-motion to strike Defendants' motions for violation of Local Rule 251 and the Court's scheduling order. (Pls.' Objs. & Mot. Strike ("Mot. Strike"), ECF No. 52.) On December 16, 2019, Defendants filed a reply to Plaintiffs' objections and counter-motion to strike. (Defs.' Reply Objs. & Mot. Strike ("Reply Mot. Strike"), ECF No. 53.)

### C. The Parties' Factual Contentions

The Court now turns to the factual contentions of the parties as laid out in their briefing. The Court shall attempt to coordinate the parties' factual contentions as best it can into a timeline of events.

On August 1, 2018, Plaintiffs filed the complaint in this action, which Plaintiffs emphasize includes facts describing Plaintiff Mr. Morelos' suicidal conduct, hospitalization, and an emotional distress cause of action. (Opp'n 1; ECF No. 1.) The scheduling order issued on December 21, 2018. (ECF No. 21.) On April 29, 2019, Plaintiff Mr. Morelos served responses to Defendants' interrogatories that identified a Mr. Douglas Bruce ("Bruce" or "Mr. Bruce"), as his therapist. (Opp'n 3; Decl. Patrick Buelna Supp. Pls.' Opp'n ("Buelna Decl.") ¶ 4, ECF No. 48-1; Buelna Decl. ¶ 4, Ex. 2, ECF No. 48-3.) Defendants emphasize that Plaintiffs' complaint, initial disclosures, and discovery responses are devoid of any specific allegation of PTSD, and the PTSD claim was mentioned for the first time during Mr. Morelos' deposition on July 1, 2019. (Mot. Reopen 3.) Plaintiffs state Defendants never served Plaintiff Mr. Morelos with any interrogatories to identify his injuries, diagnoses, or treatment as a result of the incident. (Opp'n 3.)

Defendants contend they have been attempting to obtain Mr. Morelos' therapy records since May 20, 2019, to ensure defense counsel could review the records before Mr. Morelos' deposition and question him about the contents, however, Plaintiffs thwarted such efforts resulting in not having the records available by the time of the deposition. (Mot. Reopen 3.) Specifically, on May 20, 2019, Defendants state they requested that Mr. Morelos provide the requisite signed authorization release to obtain the records from Mr. Bruce. (Mot. Reopen 6; Decl. Curtis E. Jimerson Supp. Mot. Reopen ("Jimerson Decl.") ¶ 2, ECF No. 46 at 16; Jimerson Decl. Ex. A, ECF No. 46 at 21.) The Court notes the email states counsel will be forwarding the form, and counsel also stated "I will need these records prior to taking [Mr. Morelos'] deposition." (Jimerson Decl., Ex. A.) On May 22, 2019, Defendants forwarded to Plaintiffs a completed "Authorization for Release of Medical Records for Daniel Bruce," for Mr. Morelos to sign. (Mot. Reopen 6; Jimerson Decl., Ex. B, ECF No. 46 at 23.) Defendants emphasize that

Plaintiffs did not ultimately provide the signed authorization to Defendants until August 5, 2019, seventy-seven (77) days after Defendants initially requested the authorization.[2] (Mot. Reopen 6.) Defendants did not receive the complete file from Mr. Bruce's office until October 10, 2019. (Id.)

During the period between May 20, 2019, and October 10, 2019, Defendants contend they made numerous attempts to follow up on the request for the records. (Mot. Reopen 6.) On May 24, 2019, Defendants contacted Plaintiffs and requested a stay in discovery for both Defendants' depositions and Plaintiffs written discovery in order to attend mediation. (Opp'n 3; Buelna Decl. ¶ 5, Ex. 3, ECF No. 48-4.) However, Defendants wanted to take Plaintiff Mr. Morelos and Nora Morelos' depositions prior to the mediation, and requested to have Mr. Morelos authorize the release of his mental health records. (Id.) Defendants emphasize that the stay did not extend to subpoenas directed at obtaining Mr. Morelos' medical records, and excluded the requests for the records from Daniel Bruce's office. (Mot. Reopen 6, Jimerson Decl. ¶ 4, Ex. C, ECF No. 46 at 25.) The Court notes that the May 24, 2019 email specifically states that "[t]he stay will not include pending subpoenaed records (including but not limited to the records of Daniel Bruce L.C.S.W.)[.]" (Jimerson Decl., Ex. C.) On the same day, May 24, 2019, Plaintiffs' counsel assured Defendants that they would provide the requested authorization the following week, sometime between Monday, May 27, and Friday, May 31, 2019. (Mot. Reopen 7; Jimerson Decl. ¶ 5, Ex. D, ECF No. 46 at 28.) Despite this written assurance, Defendants state that Plaintiffs' counsel failed to provide the authorization when he promised to provide it. (Mot. Reopen 7.)

On June 19, 2019, Defendants again inquired regarding the status, and Plaintiffs' counsel assured Defendants that the authorization was forthcoming, and on June 20, 2019, stated that he would have the authorization "over to [defense counsel] Wednesday [June 26, 2019]." (Mot. Reopen 7; Jimerson Decl. ¶ 6, Ex. E, ECF No. 46 at 29.)

By July 1, 2019, the date of Mr. Morelos' deposition, Plaintiffs' counsel still had not

---

[2] August 5, 2019, is seventy-seven (77) days after the May 20, 2019 date, the day Defendants first notified Plaintiffs they *would* be forwarding the form, and seventy-five (75) days after May 22, 2019, the day the form was actually forward to Plaintiffs.

provided the authorization to release Mr. Morelos' medical records from Mr. Bruce, and thus, neither Defendants nor their psychiatric expert had been able to review the records before the deposition. (Mot. Reopen 7.) Defendants contend this adversely impacted the ability to question Mr. Morelos regarding the claimed damages. (Id.) During the deposition of Mr. Morelos on July 1, 2019, Defendants argue Mr. Morelos "made a vague reference to receiving a PTSD diagnosis and treatment from the therapist" Mr. Bruce, however, Defendants contend that Mr. Morelos was unable to articulate any further meaningful details regarding this alleged diagnosis and treatment. (Id.) Because of this, Defendants' counsel reminded Plaintiffs' counsel that Defendants had made repeated attempts to obtain the authorization to release the records from Bruce's office with the express intent of reviewing the records prior to Mr. Morelos' deposition, and noted they still had not received the signed authorization. (Id.)

Plaintiffs contend that at the deposition on July 1, 2019, Mr. Morelos was examined extensively on the PTSD claim for approximately twenty (20) pages of deposition transcript. (Opp'n 4; Buelna Decl. ¶ 7, Ex. 4, Dep. Jedidiah Morelos ("Morelos Dep."), ECF No. 48-5.) Specifically, Plaintiffs highlight that Defendants' counsel asked Plaintiff if he was suffering any illnesses at the start of the deposition and Mr. Morelos responded he suffered from PTSD as a result of Defendants' conduct and that he was receiving treatment for it. (Morelos Dep. 10:25-12:24.) Plaintiffs concede that Defendants' reserved the right to re-depose Plaintiff on the PTSD claim, and Plaintiffs' counsel agreed but limited any reopening of the deposition only to the PTSD claim, and acknowledges that Defendants' counsel noted he had not received the records from Mr. Bruce, "but proceed with his deposition anyhow." (Id.; Opp'n 3.)

The Court has reviewed this portion of the deposition transcript. As part of the standard introduction of the deposition, Defendants' counsel inquired whether Mr. Morelos was suffering from any mental problem that would impact the ability to give accurate testimony, and Plaintiff responded no. (Morelos Dep. 10:25-11:3.) Counsel responded: "[y]ou hesitated there. Is there something that I need to know? (Id. at 11:4-5.) Plaintiff responded, "I mean I got PTSD but I don't think it will affect." (Id. at 11:6-7.) When asked from what, Plaintiff responded it was from the police, and that he was getting treatment. (Id. at 11:8-13.) Defendants' counsel then

addressed Plaintiffs' counsel and stated: "[w]e were supposed to get the records from his therapist . . . I didn't receive any authorization or the records," and Plaintiffs' counsel responded: "I only got the authorization from him on Wednesday so even if you subpoenaed them it will probably take a couple weeks," and Defendants' counsel responded: "I'm going to reserve my right to redepose this Witness on the issue of PTSD, since we didn't receive those records." (Id. at 11:15-25.) Plaintiffs' counsel responded: "I mean if you want to," and Defendants' counsel stated: "It's unfair. This is the first time I've heard about any PTSD. It's not listed in any of your discovery responses." (Id. at 12:1-4.) Counsel came to an agreement at that point to limit a future deposition of Mr. Morelos to questions relating to the treatment records, and Defendants' counsel stated he didn't want to re-ask questions already asked. (Id. at 12:5-24.)

Next Plaintiffs argue that in the middle of the deposition, Defendants' counsel decided to examine Plaintiff on the PTSD claim, and Plaintiffs' counsel objected that if Defendants wanted to preserve the right to re-depose him on the PTSD claim, that he should hold all questions on the issue until he received the records, because Plaintiff would not be re-produced to answer the same questions again. (Opp'n 4.) Defendants' counsel responded that he would ask to the extent he recalls but will not recover what was asked already. (Id.) Plaintiffs contend Defendants' counsel proceeded to substantively examine Plaintiff on his PTSD claim and diagnosis at length, for about twenty pages of transcript. (Id.) Defendants counter that while counsel did question Mr. Morelos about the PTSD claim, "no coherent, meaningful testimony was provided." (Mot. Reopen 3.)

The Court has reviewed this portion of the deposition transcript. Defendants' counsel asked about the PTSD after Mr. Morelos responded "[n]ot that I know of," when asked if there were any other symptoms from injuries that he claimed from the incident. (Morelos Dep. 149:18-150:4.) Counsel then reserved the right to re-question Plaintiff on the PTSD claim and agreed to ask only what he recalls and not re-ask the same questions again. (Id. at 150:13-23.) Defendants' counsel proceeded to ask about the name and location of the counselor and if he treated with anyone else, the duration of treatment, and if anyone else diagnosed him. (Id. at 151:6-152:13.) Defendants' counsel then quickly turned to the question of whether there were

any other injuries aside from the PTSD and others discussed previously, physically or emotionally. (Id. at 152:14-25.) Plaintiff described depression and other mental issues, and Plaintiff referred to PTSD when describing mental problems. (Id. at 153: 7-154:23.) Plaintiffs' counsel then interjected about confidentiality and sealing the record if the mental problems were going to be extensively discussed, and Defendants' counsel emphasized he was simply trying to get to claimed damages and mental injuries, and counsel appeared to reach an agreement to seal anything related to the psychiatric records. (Id. at 154:24-156:3.)

Defendants then focused on Plaintiffs' testimony concerning slipping in and out of reality, apparently in relation to the ability to give valid answers during the deposition. (Id. at 156:4-22.) Defendants inquired into whether this was due to the LSD ingestion or because of the incident with police officers. (Id. at 157:4-158:11.) Counsel then inquired into Plaintiff's actions after the police left, and why his family didn't take him to the hospital for four or five hours after. (Id. at 158:12-161:10.) Counsel further inquired about the effects of the LSD at that time of the incident. (Id. at 161:11-162:20.)

Then Defendants counsel returned to the more general line of question regarding the full extent of all injuries, mental and physical, and inquired generally about things such as depression and confusion, and whether he reported such symptoms to a medical provider (Id. at 162:21-170:14.) The majority of this portion of the transcript entails a back and forth regarding what Plaintiff felt at times, and objections discussed between counsel. There is no substantive discussion specifically regarding PTSD or his treatment with Dr. Bruce in this portion, and Defendants' counsel only confirms that his counselor is named Daniel Bruce in Modesto . (Id.) Based on the Court's review, Defendants' statement that while Mr. Morelos was questioned about the PTSD claim, "no coherent, meaningful testimony was provided," (Mot. Reopen 3), is largely more accurate than Plaintiffs' characterization of the exchange.

Defendants emphasize that Plaintiffs' counsel stated on the record that he "only got the authorization from him on Wednesday {June 26, 2019}." (Mot. Reopen 7; Jimerson Decl. ¶ 7; Morelos Dep. 11:18-21.) On the day after the deposition, July 2, 2019, Defendants again requested the authorization to release the records, and Defendants emphasize that while

Plaintiffs' counsel had already claimed to have received the authorization on Wednesday, June 26, 2019, Plaintiffs' counsel did not furnish the authorization. (Mot. Reopen 8; Jimerson Decl. ¶ 8, Ex. G, ECF No. 46 at 35.)

On July 23, 2019, the parties attended mediation however the case did not settle. (Opp'n 4; Buelna Decl. ¶ 8.) On July 24, 2019, Defendants state they once again requested the authorization (Mot. Reopen 8), however it is unclear whether this was by email or otherwise as there is no exhibit or detail regarding this communication. Nonetheless, Plaintiffs' counsel wrote in an email on July 24, 2019, that "discovery will resume August 1," and "[i]n regards to the Authorization, I will send August 1." (Mot. Reopen 8; Jimerson Decl. ¶ 9, Ex. H, ECF No. 46 at 38.) Defendants state they "rejected this" and on July 25, 2019, Defendants made another request for the authorization. (Mot. Reopen 8; Jimerson Decl. ¶ 10, Ex. I.) The Court notes the July 25, 2019, does not expressly reject the August 1 date, however, does state "[t]hanks for the reminder on the discovery," and "[p]lease forward the authorization so we can get the records ordered, I assume you need them as well." (Jimerson Decl., Ex. I.) On July 26, 2019, Plaintiffs' counsel replied "[t]he authorization I'll send on the first." (Jimerson Decl., Ex. J, ECF No. 46 at 41.)

Plaintiffs failed to provide the authorization by August 1, 2019, and Defendants state they again inquired about the status,[3] and on August 5, 2019, Plaintiffs' counsel "finally" gave the authorization to release the records, roughly eleven (11) weeks after Defendants first requested it. (Mot. Reopen 8.) Defendants emphasize that the authorization indicates that Mr. Morelos signed the form on July 1, 2019, the same day as Mr. Morelos' deposition, and the same day Defendants made the renewed request for the signed authorization. (Mot. Reopen 8; Jimerson Decl. ¶ 12, Ex. K, ECF No. 46 at 43.)[4] Defendants argue that it "is undisputable that Plaintiffs' counsel withheld the signed authorization for more than a month, knowing that Defendants

---

[3] It is unclear on what date or how this communication occurred from the briefing and exhibits.

[4] While Defendants attach an Exhibit K, a copy of the authorization form signed July 1, 2019, the Court notes Mr. Jimerson's declaration omits a statement that he is attaching such as a true and correct copy of the form, apparently mistakenly jumping from Exhibit J to L, however does aver to the fact that it was signed July 1, 2019. (Jimerson Decl. ¶¶ 12, 17.) Plaintiffs have not objected to or dispute the authenticity of this document.

would be unable to obtain the relevant medical records without it." (Mot. Reopen 8.) Plaintiffs concede that the Plaintiff did not provide the authorization until August 5, 2019, but emphasize that this was three months prior to the fact discovery deadline. (Opp'n 5.)

On August 5, 2019, the day Defendants received the authorization form, Defendants state they forwarded the signed authorization form to a subpoena service for processing. (Mot. Reopen 9.) Plaintiffs respond that records reflect the subpoena was signed on August 13, 2019. (Opp'n 5; Buelna Decl. ¶ 9, Ex. 5, ECF No. 48-6.) The Court notes that the subpoena appears in fact to have been signed by Defendants' attorney Michael Mordaunt on August 13, 2019. (Id.) The Court notes that this does not appear to be in direct contradiction to Defendants' statement as they only state they forwarded the signed authorization form to the subpoena service for processing. (Mot. Reopen 9.)

In response to the records request, Defendants stated they only received "partial and incomplete records" from Mr. Bruce, on October 3, 2019, and the complete file was not provided until October 10, 2019. (Mot. Reopen 9.) Defendants state the complete file only consisted of six (6) pages of "largely illegible handwritten notes memorializing incomplete statements completely devoid of any context or background," and thus, Defendants argue a deposition of Mr. Bruce "was essential in order to decipher his ambiguous notes." (Id.) Again, Plaintiffs contend Defendants have misstated the record here. (Opp'n 5.) While Defendants assert they received the subpoenaed documents on October 3, 2019, Plaintiffs highlight that in an email dated October 2, 2019, Defendants' counsel said they had received the subpoenaed documents and mentioned they wished to re-depose Plaintiff on the PTSD claim. (Opp'n 5; Buelna Decl. ¶ 10, Ex. 6.) The Court has reviewed this email and it in fact does show that on October 2, 2019, Defendants' counsel wrote "[p]er our agreement we received the records form Daniel Bruce LCSW and are now in a position to complete Jedidiah's deposition." (Id.)

Defendants also contend that they re-noticed Mr. Morelos' deposition after the records were "finally" received and reviewed, however, "consistent with their pattern of conduct, Plaintiffs' counsel refused to produce Mr. Morelos knowing that fact discovery was set to close in a matter of days." (Mot. Reopen 8.) Plaintiffs respond that there was some discussion about

re-deposing Mr. Morelos, however meet and confer efforts stopped, and Plaintiffs state that "Defendants refused to meet and confer and appeared to no longer wish to take the deposition." (Opp'n 5; Buelna Decl. ¶ 10, Ex. 6, ECF No. 48-7.)

The therapist Mr. Bruce was deposed on October 25, 2019, which Defendants state was the first and earliest date he was available prior to the non-expert discovery cut-off date. (Mot. Reopen 9.) At the deposition, Plaintiffs note Defendants requested an extension of the expert discovery deadline "but made absolutely no mention" of a mental examination. (Opp'n 5; Buelna Decl. ¶ 11.) Thereafter, Defendants emailed Plaintiffs to request an extension of other expert deadlines, to which Plaintiffs agreed, but Defendants again made no mention of a mental exam. (Id.) The Court accepted a stipulation on the expert deadlines on October 31, 2019. (ECF Nos 35, 36.)

After the deposition, Defendants requested an expedited transcript which was received on October 31, 2019. (Mot. Reopen 9.) The transcript was forwarded to Defendants' psychiatric expert for review, and thereafter non-expert discovery closed on November 4, 2019, pursuant to the scheduling order. (Id.) On or about November 7, 2019, Defendants' expert Dr. Strassberg advised that Mr. Bruce's records were "incomplete, lacked specificity and clinical reasoning (and the lack of any explanation for same during Mr. Bruce's deposition)," and the expert could not provide any opinions regarding Mr. Morelos' alleged PTSD in absence of an in-person examination. (Id.)[5] Pursuant to the stipulation of the parties, expert disclosures and reports were due on or before November 13, 2019. (ECF NO. 36.) Defendants contend that the Dr. Strassberg's expert report further advises of the need for an in-person examination to provide his opinions. (Id.)

After receiving the information from Defendants' expert, Defendants attempted to meet and confer with Plaintiffs and requested that Plaintiffs stipulate to reopen discovery for the limited purpose of conducting a mental examination of Mr. Morelos, including an in-person conference on November 8, 2019, correspondence dated November 14, 2019, and further

---

[5] The Court notes there is no exhibit attached demonstrating this communication from Dr. Strassberg, however, it is likely a reflection of an apparent oral communication given the date is offered as an approximation.

discussions on November 18, 2019, and despite these efforts, Plaintiffs declined to stipulate. (Mot. Reopen 9; Jimerson Decl. ¶¶ 16-18, Exs. L, M, ECF No. 46 at 45, 51.) Plaintiffs emphasize that the first date the Defendants requested the mental examination was November 8, 2019, after the close of fact discovery. (Opp'n 6; Buelna Decl. ¶ 12.) Plaintiffs' counsel advised Defendants that the mental examination should have been completed during the time period for fact discovery, and Defendants responded that there was good cause for completing the examination because Plaintiff Mr. Morelos was not produced for re-deposition, and argue Defendants have now changed their alleged reason for not taking the mental examination during the discovery period. (Opp'n 6.)

On November 13, 2019, Defendants disclosed their expert witnesses, including Dr. Strassberg, whose Rule 26 report failed to issue any opinion without performing an independent mental examination. (Mot. Exam, ECF No. 47 at 16.) Specifically, Dr. Strassberg's report states

> I have been asked to evaluate plaintiff, Jedidiah Morelos' claim of PTSD, emotional distress as well as the care he was provided by Mr. Bruce. In order to render opinions, I need to examine and evaluate Mr. Morelos in person.
> It is my understanding that the defendants intend to petition the court for leave to allow me to perform an Independent Medical Examination ("IME") of plaintiff Jedidiah Morelos. As such, I cannot offer my complete opinions in this case until such time as I am afforded the opportunity to complete the aforementioned IME.

(Id.)

On November 14, 2019, Defendants sent their first meet and confer letter requesting the mental examination. (Opp'n 6; Buelna Decl. ¶ 13, Ex. 7.) Thereafter, Plaintiffs reminded Defendants that they had never mentioned such exam throughout the year of fact discovery, even while meeting and conferring regarding reopening Mr. Morelos' deposition. (Id.) On November 20, 2019, Defendants informed Plaintiffs of their intent to file the motions currently before the Court, and requested Plaintiffs' portion of the joint statement. (Id.) Plaintiffs notified Defendants that the request was unreasonable given the requirements of the Local Rules, and because Defendants did not provide their portion for review. (Id.) Plaintiffs state they still have not received Defendants' portion of the joint statement and argue Defendants appear to refuse to cooperate with the Local Rules. (Opp'n 6-7; Buelna Decl. ¶ 14.) On November 25, 2019, Plaintiffs argue Defendants filed the *ex parte* application to shorten time, and arbitrarily set dates

for the opposition to be filed as December 2, 2019, following the Thanksgiving holiday weekend. (Id.) The Court granted the *ex parte* motion and did extend the proposed date for opposition given the holiday weekend. (ECF No. 45.) This dispute over the joint statement is also the subject of a motion to strike and objections filed by Plaintiffs on December 12, 2019, which the Court addresses below in this order. (ECF No. 52.)

### III.

### LEGAL STANDARD

#### A.    Motion to Reopen Discovery

This Court generally has significant discretion and authority to control the conduct of discovery. Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988). Pursuant to Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.1992). To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of that order. Id. The prejudice to other parties, if any, may be considered, but the focus is on the moving party's reason for seeking the modification. Id. If the party seeking to amend the scheduling order fails to show due diligence the inquiry should end, and the court should not grant the motion to modify. Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (citing Mammoth Recreations, 975 at 609).

It is "significant" when a party is seeking a "retroactive reopening" of discovery rather than extending the discovery deadline. W. Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1524 (9th Cir. 1990). "The difference [between the two types of requests] is considerable" because "a request for an extension acknowledges the importance of a deadline, [while] a retroactive request suggests that the party paid no attention at all to the deadline." Id. When ruling on a motion to amend a Rule 16 scheduling order to reopen discovery, the Court is to "consider the following factors: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent

in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1066 (9th Cir. 2017).

### B. Independent Medical or Mental Examination under Rule 35

A district court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such order "(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(A)-(B). The requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance of the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964).

While courts do not generally order such mental examinations for "garden variety" emotional distress claims, "courts will order courts will order plaintiffs claiming emotional distress damages to undergo an [independent mental exam] when one or more of the following factors is present: (1) the complaint includes a claim for intentional or negligent infliction of emotional distress; (2) the plaintiff alleges a specific mental or psychiatric injury or disorder; (3) the plaintiff claims unusually severe emotional distress; (4) plaintiff offers expert testimony to support the claim of emotional distress; or (5) the plaintiff concedes that her mental condition is 'in controversy' for purposes of Rule 35." Gavin v. Hilton Worldwide, Inc., 291 F.R.D. 161, 164 (N.D. Cal. 2013). Courts also consider "the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress." Barsamian v. City of Kingsburg, No. 1:07-CV-00316-OWW GSA, 2008 WL 2168982, at *2 (E.D. Cal. May 22, 2008) (citations omitted).

# IV.

## ANALYSIS & DISCUSSION

Defendants request the Court reopen discovery for the limited purpose of allowing Defendants' psychiatric expert to complete a mental examination of Plaintiff Jedidiah Morelos. (Mot. Reopen 3.) Defendants emphasize that Plaintiffs' complaint, initial disclosures, and discovery responses did not reference any allegation of PTSD, and the PTSD claim was mentioned for the first time during Mr. Morelos' deposition on July 1, 2019. (Id.) Defendants contend the examination is required in order to obtain an accurate assessment of Mr. Morelos' claimed injuries and damages, specifically his "newly asserted" claim of PTSD. (Id.) Defendants generally argue that Plaintiffs' delay in producing the authorization to release medical records led to a chain of events whereby Defendants did not know of the need for the independent medical examination until after the close of fact discovery.

Plaintiffs argue that Defendants' request is improper and delayed, and that Plaintiffs' emotional distress claim was apparent in his complaint as early as August 1, 2018, Plaintiff Mr. Morelos identified Mr. Bruce as a therapist as early as April 29, 2019, Mr. Morelos' deposition testimony described his PTSD diagnosis on July 1, 2019, and Mr. Bruce's records were available on October 4, 2019. (Opp'n 2.) Plaintiffs argue good cause does not exist to reopen discovery because the motions were not filed until after the close of fact discovery despite Defendants' knowledge of these aforementioned facts. (Opp'n 8.) Plaintiffs correctly highlight a certain portion of the language contained in the Court's scheduling order issued on December 21, 2018, which the Court shall reproduce in its entirety as it is relevant to the instant matter:

> The parties are cautioned that the discovery/expert cut-off deadlines are the dates by which all discovery must be completed. Absent good cause, discovery motions will not be heard after the discovery deadlines. Moreover, absent good cause, the Court will only grant relief on a discovery motion if the relief requested requires the parties to act before the expiration of the relevant discovery deadline. In other words, discovery requests and deposition notices must be served sufficiently in advance of the discovery deadlines to permit time for a response, time to meet and confer, time to prepare, file and hear a motion to compel and time to obtain relief on a motion to compel. Counsel are expected to take these contingencies into account when proposing discovery deadlines. Compliance with these discovery cutoffs requires motions to compel be filed *and heard* sufficiently in advance of the discovery cutoff so that the Court may grant effective relief within the allotted discovery time. A party's failure to have a discovery dispute heard sufficiently in

advance of the discovery cutoff may result in denial of the motion as untimely.

(ECF No. 21 at 3.)  Thus, the Court will determine, in accordance with Ninth Circuit law and the terms of this Court's scheduling order, whether good cause exists to reopen discovery and require Plaintiff Mr. Morelos to submit to an independent mental examination.

In Defendants' opening brief, and Plaintiffs' opposition, while the parties agree the correct standard for reopening discovery counsels the Court to consider: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence, neither party clearly delineated their arguments under these factors in the opening and opposition briefs.  However, Defendants did clearly delineate their arguments under these factors in their reply briefing.  The Court now turns to consideration of these six factors.

### A.    Whether Trial is Imminent

Defendants argue that given the trial date is not until May 5, 2020, there is ample opportunity to complete the mental examination and disclose Defendants' expert's opinions regarding such.  (Reply 3-4.)  As discussed below, Plaintiffs argue that they are prejudiced due to the deadline for supplemental expert reports expiring on December 11, 2019, before the hearing date for this motion, and allowing the examination would deny an opportunity for Plaintiffs to rebut any opinions of Defendants' expert.  (Opp'n 9.)  Defendants emphasize the Court has broad discretion to modify the scheduling order, and if the exam is permitted, can modify such to allow Plaintiffs time to file a supplemental or rebuttal expert report well in advance of the May 5, 2020 trial date.  (Reply 3-4.)

Defendants have proposed a date of January 3, 2020, for the examination to occur.  The Court finds this leaves sufficient time between the exam date and the trial date set to occur nearly five months later.  The Court agrees that it can further modify the scheduling order for the

limited purpose of allowing Plaintiffs to submit a supplemental or rebuttal expert report following the exam, if Plaintiffs are inclined to do so. If they find it necessary, the Court encourages Defendants to agree to a stipulation of such if requested by the Plaintiffs.

The Court also notes that the deadline to file dispositive motions is set to expire on December 18, 2019. (ECF No. 21.) The parties have not raised any concerns regarding the impact of reopening discovery on the dispositive motion deadline, and the Court assumes this is because the examination and any subsequent expert report will be limited to the issue of damages.

Accordingly, the Court finds this factor weighs in favor of granting the motion to reopen discovery.

**B.      Whether the Request is Opposed**

As the reopening of discovery is opposed by Plaintiffs, the Court shall proceed to weigh the merits of the parties' arguments concerning the other factors to determine if Defendants have sufficiently demonstrated good cause to reopen discovery.

**C.      Whether the Non-Moving Party would be Prejudiced**

Defendants argue the limited discovery sought is not prejudicial by its very nature, and the only reason why the need for the examination was not immediately foreseeable was due to Plaintiffs' delay in "intentionally withholding" and delaying the authorization form. (Mot. Reopen 14.) Defendants argue a mental examination would facilitate an accurate assessment of the full extent of Mr. Morelos' claimed injuries, and Plaintiffs would only have to engage in the same discovery process that would have taken place earlier had Plaintiffs' counsel not withheld and delayed the authorization to release the records. (Id.)

Here, Plaintiffs emphasize that while Defendants have moved to reopen fact discovery for the mental examination, even if the Court were to grant such motion, expert designations have taken place and by the time of the hearing scheduled for the motions, December 18, 2019, the deadline for supplemental expert disclosure will have expired on December 11. (Opp'n 14-

15.)[6]  As Defendants have moved to take the examination on January 3, 2020, because Dr. Strassberg is a retained expert, Plaintiffs argue the Court would have to restart expert designations because any report that he produced would be untimely, and Plaintiff would be severely prejudiced because he would not even be permitted an opportunity to rebut Dr. Strassberg's report.  (Opp'n 15.)

As discussed above, if the examination is allowed to proceed, the Court would be inclined to modify the scheduling order for the limited purpose of allowing Plaintiffs to submit a supplemental or rebuttal expert report following the exam, if Plaintiffs feel the need to do so. Having raised no other argument demonstrating they would be prejudiced by the reopening of discovery for the limited purpose of completing the independent medical examination, the Court finds this factor weighs in favor of reopening discovery.

### D.  Whether the Moving Party was Diligent in Obtaining Discovery within the Established Deadlines

Defendants argue there is good cause to modify the scheduling order because Defendants' inability to schedule a mental examination of Mr. Morelos prior to the discovery cut-off was caused by Plaintiffs' dilatory conduct in refusing to timely produce the requested authorization to release the medical records, despite Defendants' diligent efforts to obtain the information.  Defendants emphasize that the first time PTSD was ever mentioned in this action was at the July 1, 2019 deposition, nearly one year after Plaintiff's complaint was filed, and at the time, Defendants did not have the psychiatric records previously available and thus were not able to properly inquire about the PTSD at the deposition.  (Mot. Reopen 11.)  Defendants also argue that "despite reserving its rights to re-depose Mr. Morelos once Mr. Bruce's records were received, Plaintiffs' counsel refused to produce him on the eve of [the] date noticed with knowledge that the discovery cut-off was set to lapse in a matter of days."  (Id.)  Defendants contend they made "request after request" for the authorization to release the records, and the "[t]he only reason Defendants did not seek Court intervention was because after each request,

---

[6]  The Court also notes that the deadline for completion of all expert discovery is January 17, 2020.  (ECF No. 36.)

Plaintiffs' counsel continued to falsely assure defense counsel that the authorization was forthcoming." (Mot. Reopen 12.) Defendants further state good cause exists because Plaintiffs knew Defendants could not obtain the therapy records without an authorization and withheld it nonetheless, and the intentional delay caused a "cascade of events that ultimately harmed the defendants ability to defend." (Mot. Reopen 12.)

Specifically, this delay in providing the authorization prevented Defendants from receiving the complete records from Mr. Bruce until October 10, 2019, which they state is 144 days after the original request for the authorization was made, and only a little more than three weeks before the close of discovery. (Mot. Reopen 12.) Then, the records received were largely illegible, and the records alone were not sufficient to confirm any diagnosis of PTSD, which necessitated the noticing and taking of the deposition of Mr. Bruce to obtain additional clarification regarding the treatment. (Id. at 12.) The deposition of Mr. Bruce occurred on the first date he was available, October 25, 2019, and following the deposition Defendants ordered an expedited transcript to provide to Defendants' expert for review, received on October 31, 2019. (Id.) Upon review of the transcript, Defendants' expert advised on November 7, 2019, that based on the review of all records available, it was impossible to render any opinion on the validity of Mr. Morelos' claim of PTSD without an in-person examination. (Id. at 13.) Thus, because fact discovery closed on November 4, 2019, despite Defendants' exercise of diligence, and because of Plaintiffs' counsels conduct, Defendants were unable to conclusively determine the need for a mental examination and request one within the confines of the scheduling order. (Id.)

Plaintiffs argue Defendants not only lacked diligence, but were carless in the failure to request a mental examination at an earlier date. (Opp'n 12-13.) Plaintiffs again emphasize that the Defendants' counsel spent approximately twenty pages worth of deposition transcript questioning Mr. Morelos' PTSD, including confirmation that Mr. Bruce diagnosed him with PTSD and that he started therapy sessions with him approximately three months prior to the deposition. (Id.) Plaintiffs contend that "[t]he only remaining conclusion is that Defendants merely manufactured the issue of Mr. Bruce's transcript in order to conceal their failure to

request an IME and lack of diligence." (Opp'n 13.) Plaintiffs contend the failure to request the mental exam at any time prior to the close of fact discovery is the definition of carelessness as Defendants received the records from Mr. Bruce on October 2, 2019, which clearly reflect a diagnosis that Plaintiff was suffering from PTSD. (Opp'n 13; Buelna Decl. ¶ 16, Ex. 9.) Only after the close of fact discovery and after they retained an expert who refused to provide an opinion until an independent exam was completed, did Defendants finally move to request to the mental exam. (Opp'n 14.) Plaintiffs emphasize that the expert has "flat out refused to give any opinions on Plaintiff's mental health without an IME regardless of medical records or transcript," and therefore Defendants knew well before the close of fact discovery that Dr. Strassberg would require an exam and never sought one. (Opp'n 14.)

Weighing all the facts presented by the parties, the Court finds Defendants have sufficiently shown reasonable diligence. First, as to Plaintiffs argument that the complaint put Defendants on notice for the need for an independent examination, Courts do not normally order independent medical examinations for claims seeking generic emotional distress damages. See Gavin v. Hilton Worldwide, Inc., 291 F.R.D. 161, 164 (N.D. Cal. 2013) ("Courts typically do not order IMEs when plaintiffs seek 'garden-variety' emotional distress damages.") (citing Tan v. City and County of San Francisco, 2009 WL 594238, *1 (N.D. Cal. Mar. 4, 2009)).[7] Turning to the specific interactions regarding discovery, on May 24, 2019, when agreeing to a stay of discovery, Defendants clearly stated the caveat that the stay did not extend to subpoenas directed at obtaining Mr. Morelos' medical records, and specifically excluded requests directed at records from Mr. Bruce's office. (See Jimerson Decl., Ex. C.) On the same day, Plaintiffs' counsel assured Defendants that they would provide the requested authorization the following week. (See Jimerson Decl. ¶ 5, Ex. D.) On June 19, 2019, Defendants again inquired regarding the authorization form and Plaintiffs' counsel assured Defendants that the authorization was

---

[7] On the other hand, Plaintiffs' complaint does bring a claim for negligent infliction of emotional distress, and the Court notes the Gavin opinion also considers where a complaint raises an "intentional or negligent infliction of emotional distress claim," such factor may lend toward a court granting a motion for an independent mental examination, a factor this Court does find weighs in favor of ultimately granting the motion for the mental exam, as discussed below. Gavin, 291 F.R.D. at 164. Nonetheless, given the totality of the facts presented in Plaintiffs' eight causes of action, the Court finds the claim did not put Defendants on notice of the need for an independent mental examination at the time of filing.

forthcoming, replying on June 20, 2019 that he would have the authorization to Defendants by June 26, 2019.  (See Jimerson Decl. ¶ 6, Ex. E.)  When Mr. Morelos averred to a PTSD diagnosis at the beginning of his deposition on July 1, 2019, Defendants' counsel immediately highlighted the fact that the medical authorization form had not been provided and reserved the right to re-depose Mr. Morelos concerning the PTSD claim.  (Morelos Dep. 10:25-12:24.)  Although it appears meet and confer efforts broke down when attempting to reschedule Mr. Morelos' deposition near the close of fact discovery, it is apparent that Defendants clearly desired the medical records at the time of the deposition, reserved the right to redepose Plaintiff at the time, and continued to pursue obtaining the authorization and medical records following the deposition.

At Mr. Morelos' deposition, Plaintiffs' counsel stated on the record that he had in fact received the authorization form from Mr. Morelos on June 26, 2019.  (Morelos Dep. 11:18-21.)  The authorization form appears to have been signed by Mr. Morelos on July 1, 2019, the date of the deposition, however it was not provided at the deposition.  (Jimerson Decl. ¶ 12, Ex. K.)  On July 2, 2019, Defendants again requested the form but it was not turned over.  (Jimerson Decl. ¶ 8, Ex. G.)  On July 24, 2019, Plaintiffs' counsel stated he would provide the authorization form on August 1, 2019.  (Jimerson Decl. ¶ 9, Ex. H.)  On July 25, 2019, Defendants again requested the authorization form, although they did not expressly reject the proposed date of August 1, 2019.  (Jimerson Decl., Ex. I.)  Plaintiffs' counsel again assured Defendants he would send the authorization on August 1.  (Jimerson Decl., Ex. J.)  Plaintiffs again failed to provide the form on the agreed upon date of August 1, 2019.  Following Plaintiffs' failure to provide the form on August 1, 2019, Defendants state they again inquired about the status, and the authorization form was finally provided on August 5, 2019.

Plaintiffs' counsel have not explained the reason why the authorization form was apparently not obtained from Mr. Morelos until June 26, 2019, despite the communications from Defendants on May 22, and May 24, 2019, alerting them to the need for such.  Further, although Plaintiffs were apparently in possession of the form by July 1, 2019, Plaintiffs have offered no explanation for why the form was not provided to Defendants at the deposition, nor why it was

apparently withheld for more than a month thereafter until it was turned over on August 5, 2019.

Whether Defendants thereafter issued the subpoena on August 5, 2019, or August 13, 2019,[8] the Court finds the Defendants were sufficiently diligent in continuing to pursue the medical records from Mr. Bruce's office following the receipt of the authorization form. Following receipt of the subpoenaed records, the Court finds Defendants were reasonably diligent in pursuing another deposition of Mr. Morelos, through an immediate communication on October 2, 2019,[9] although it appears discussions broke down between the parties over dates and whether Defendants still had a right to redepose Mr. Morelos on the issue of PTSD, and Defendants ultimately did not pursue a motion to compel such deposition or further meet and confer on the issue. Defendants have also stated that the production from Mr. Bruce was initially incomplete, and the complete file was not provided until October 10, 2019, a fact not disputed by Plaintiffs. (Mot. Reopen 9.)

Thereafter, Mr. Bruce was deposed on October 25, 2019, which Defendants state was the first and earliest available date prior to the non-expert discovery cut-off date. (Id.) Following the deposition, Defendants requested an expedited transcript on October 31, 2019, which was forwarded to their psychiatric expert for review, a few days before the close of fact discovery which expired on November 4, 2019. (Mot. Reopen 9.) On November 7, 2019, the expert advised Defendants of the need for the examination prior to him being able to issue an appropriate expert opinion on the PTSD diagnosis. (Mot. Reopen 9.) Plaintiff concedes that Defendants thereafter requested the examination on November 8, 2019, the day after being informed from their expert of the need for such. (Opp'n 6; Buelna Decl. ¶ 12.)

Based on these facts, the Court finds Defendants were reasonably diligent throughout the

---

[8] As noted in the Court's summary of the factual allegations of the parties' above, on August 5, 2019, the day Defendants received the authorization form, Defendants claim they forwarded the signed authorization form to a subpoena service for processing. (Mot. Reopen 9.) Plaintiffs respond the subpoena was signed on August 13, 2019. (Opp'n 5; Buelna Decl. ¶ 9, Ex. 5.) The subpoena appears in fact to have been signed by Defendants' attorney on August 13, 2019. (Id.)

[9] Also as noted above in the Court's factual summary, while Defendants assert they received the subpoenaed documents on October 3, 2019, Plaintiffs correctly state that in an email dated October 2, 2019, Defendants' counsel wrote "[p]er our agreement we received the records form Daniel Bruce LCSW and are now in a position to complete Jedidiah's deposition." (Id.)

discovery process in their attempts to obtain the authorization form, in obtaining the medical records through subpoena, in seeking another deposition of Mr. Morelos, in deposing Mr. Bruce at the earliest available date after receiving the records, in dispatching the records and deposition transcript to their expert, and in requesting the independent examination immediately following advisement of the need for such from Defendants' expert. Although it may have been more pragmatic for Defendants to move to compel for the authorization form earlier, or to file the motion to reopen discovery immediately after the failure to obtain a stipulation to do so on November 8, 2019, and November 14, 2019 (Mot. Reopen 9), the Court finds Defendants were reasonably diligent, particularly in light of the continued failure of Plaintiffs to provide the authorization form despite repeated requests and assurances to do so, and without any apparent explanation offered to the Court for such failure.[10] Accordingly, the Court finds this factor weighs in favor of granting the motion to reopen discovery.

### E. The Foreseeability of the Need for Additional Discovery

Defendants emphasize that it was not foreseeable that Plaintiffs would take seventy-seven (77) days to produce the authorization form and argue that Plaintiffs still have not articulated any explanation for why it took them that long to produce the form. (Reply 7.) Defendants contend the delay caused a "domino effect," which slowed the pace of all subsequent discovery related to Mr. Morelos' mental condition," and the late production of the authorization in turn caused tardy and initially incomplete production of the records, which in turn delayed Mr. Bruce's deposition,

---

[10] In this regard, the Court finds whether the Defendants were diligent is a closer call than the other factors weighed in this opinion. While Plaintiffs repeatedly failed to provide the authorization form as requested and as promised on multiple dates, instead of waiting upon the assurances and actions of opposing counsel, the more prudent course of action to ensure their clients' interests were protected would have been for Defendants' counsel to seek court intervention at an earlier date. Defendants were not abundantly diligent in seeking the authorization form prior to the July 1, 2019 deposition, however, Defendants were sufficiently diligent in light of Plaintiffs' promises to produce such, and failure to do so without explanation then and now. Nonetheless, both parties' resources, and the Court's resources in adjudicating this now extensive discovery dispute extending over months, likely could have been preserved if the Defendants had brought a motion to compel, or employed the Court's informal discovery resolution process. As stated in the Court's order setting the scheduling conference in this matter (ECF No. 3 at 7), information on discovery dispute procedures is available at the United States District Court for the Eastern District of California's website (www.caed.uscourts.gov) under Judges; United States Magistrate Judge Stanley A. Boone (SAB). In the area entitled "Case Management Procedures," there is a link to "Discovery Dispute Procedures." Therein, the Court provides a mechanism for the informal resolution of discovery disputes through an informal telephonic conference, by agreement of the parties to abide by such procedures. If Plaintiffs had declined to participate in the informal process, the Defendants could have then formally moved for compliance.

1   which in turn delayed Defendants' psychiatric expert from receiving Mr. Bruce's deposition
2   transcript until the eve of fact discovery cut-off.  (Reply 7.)

3       Plaintiffs argue that "Defendants have "feigned that they could not possibly have
4   foreseen the PTSD or emotional distress claim during discovery," but the argument is "belied by
5   the fact that their expert, Dr. Strassberg, has refused to give an opinion at all without an IME,
6   which Defendants knew well in advance of the close of fact discovery, was foreseeable and for
7   which they have no explanation or even an affidavit from their expert."  (Opp'n 11.)  Plaintiffs
8   contend that even if they had only learned of the PTSD claim at the time of expert disclosures,
9   Defendants were already obligated to seek the mental examination from the start of the litigation
10  because the more general emotional distress claim was always at issue.  (Id.)  Plaintiffs cite
11  Miksis v. Howard, 106 F.3d 754 (7th Cir. 1997), in support of this argument.  (Opp'n 11.)
12  Plaintiffs argue the situation is analogous to the facts here, as Plaintiff alleged suicidal behaviors,
13  a mental health crisis, hospitalization, and emotional distress in the complaint, and thus put his
14  medical condition at issue, and thus this itself put Defendants on notice of the need for a mental
15  examination.  (Opp'n 11-12.)   Further, Plaintiff identified a therapist in his interrogatory
16  responses, testified to the PTSD diagnosis on July 1, 2019, and produced the psychiatric records
17  on October 2, 2019, well before the fact discovery deadline of November 4, 2019.  (Opp'n 12.)

18      Initially, the Court  notes the facts in the non-controlling Seventh Circuit opinion cited by
19  Plaintiffs are largely distinguishable from the facts here.  In Miksis, defendants argued they were
20  "sandbagged" on July 24, 1995, after they received notice of plaintiff's proposed expert
21  testimony concerning a multi-million-dollar life plan, and the Seventh Circuit held the facts
22  "belied" such claim.  Miksis,106 F.3d at 758.  Significantly, the appeals court noted the original
23  discovery cut-off was March 31, 1995, and the defendants did not request the medical exam until
24  more than four months later, on August 11, 1995.  Id.  The Seventh Circuit found the need for
25  the life plan, described as a "prediction of high medical costs for the remainder of plaintiff's
26  life—was clearly foreseeable from the nature of plaintiff's injuries," as the plaintiff suffered
27  brain damage causing permanent physical and cognitive impairments, and defendants "knew
28  from day one that plaintiff's medical condition was an issue."  Id. at 758.  Further, the court

noted that defendants "made a conscious decision not to move for a medical examination because they did not think they needed one," that they "knew all along that according to the schedule set by the court they would not receive plaintiff's experts' proposed opinions until after the close of discovery," and "[w]hen they decided not to move for a medical examination prior to the discovery deadline—which they knew was prior to any required expert disclosures—they also made the decision to remain in ignorance." Id. at 759.

In contrast to the clear damages present in Milksis, here, the Court agrees with Defendants that Plaintiffs' general claim for negligent infliction of emotional distress, would not put Defendants on notice that Mr. Morelos would be claiming a diagnosis of PTSD or that he would be seeking treatment for such. As stated above, Courts do not normally order independent medical examinations for claims seeking generic emotional distress damages, although a negligent infliction of emotional distress claim is one factor that weighs in favor of allowing such exam. See Gavin, 291 F.R.D. at 164 ("Courts typically do not order IMEs when plaintiffs seek 'garden-variety' emotional distress damages.") Further, while discovery responses served on April 29, 2019, did indicate Plaintiff was seeing a "therapist," Defendants sought records pertaining to such therapy from Mr. Bruce less than thirty days later, well before the discovery cutoff in November of 2019. (See Buelna Decl. ¶ 4, Ex. 2; Jimerson Decl., Exs. A, B.) Rather than making a "conscious decision not to move for a medical examination because they did not think they needed one," Miksis, 106 F.3d at 759, as explained in the previous section of this opinion, Defendants exercised reasonable diligence in pursuing the authorization and medical records so that they could provide them to their psychological expert to review. Once the expert informed Defendants of the need for an independent examination, they immediately requested one a matter of days after the close of fact discovery, in contrast to requesting one four months after the original deadline in Milksis. Id. The need for additional discovery was not clearly foreseeable because of the repeated delay caused by Plaintiffs in this matter, particularly the approximately two and a half month period between the time the authorization form was requested and the date it was provided, including over a month delay after the time Plaintiffs were apparently in possession of the form, signed and completed on July 1, 2019, the date of Mr.

1  Morelos' deposition.  Again, Plaintiffs have submitted no explanation for this delay.  Defendants

2  have shown that they immediately requested an examination upon being informed from their

3  expert of the need to conduct such independent examination.

4      For these reasons, the Court finds this factor weighs in favor of granting the motion to

5  reopen discovery.

6      **F.    The Likelihood that Discovery will Lead to Relevant Evidence**

7      Defendants argue that a mental examination is crucial in this case because it will disclose

8  highly relevant evidence regarding the nature and extent of the claimed injuries, and obtaining an

9  accurate assessment is particularly important given Plaintiffs are seeking compensation for the

10 injuries from a taxpayer funded public entity and from taxpayer compensated public servants.

11 (Reply 5.)  Defendants also argue the newly asserted PTSD claim is highly suspect for several

12 reasons which underscore why the need for the exam is so critical.  (Reply 5.)  In this regard,

13 Defendants highlight that: (1) Mr. Morelos did not seek treatment with Mr. Bruce for PTSD until

14 in or around April of 2019 (Opp'n 13), over one year after the incident on March 14, 2018; (2)

15 Mr. Morelos' deposition testimony indicated Mr. Bruce treated him for PTSD, but PTSD is a

16 psychiatric disorder and Mr. Bruce is not a psychiatrist or even a doctor (Opp'n 3); and (3) Mr.

17 Morelos only started therapy sessions with Mr. Bruce approximately two and a half months prior

18 to the deposition, (April 15, 2019 and July 1, 2019).  (Reply 5-6.)  Thus, Mr. Morelos sought

19 treatment from a social worker, not a doctor, more than one year after the incident, less than

20 three months before the mediation in July of 2019, and a two and a half months prior to the

21 deposition, all of which Defendants allege "smacks of artifice and malingering."  (Reply 6.)

22 Defendants state that ultimately, a review of Mr. Bruce's records and deposition testimony

23 revealed that an in-person medical examination by a psychiatrist is required for an accurate

24 assessment of Mr. Morelos' claims.  (Reply 6.)

25     The Court does not find the fact that Defendants are a public entity and public servants as

26 impacting a relevancy analysis.  The Court also declines to weigh on whether the facts

27 surrounding the therapy indicate any "artifice or malingering."  Nonetheless, the Court finds the

28 discovery sought to be clearly relevant to the issue of damages in this matter, and Plaintiffs have

1 not put forth any argument that the discovery is not relevant in their briefing. Accordingly, the
2 Court finds this factor weighs in favor of granting the motion to reopen discovery.

3 As the balance of factors weigh in favor of granting the motion to reopen discovery, the
4 Court shall grant the motion to reopen discovery.

5 **G.    The Rule 35 Motion for the Independent Medical Examination**

6 Having found that the relevant factors collectively weigh in favor of granting the motion
7 to reopen discovery for the limited purpose of conducting the independent mental examination,
8 the Court now turns to determine whether Defendants have shown good cause in their motion for
9 an order requiring Plaintiff Jedidiah Morelos to appear for the mental examination. (ECF No.
10 47.)

11 Defendants argue cases involving claims of PTSD or similar mental health disorders are
12 the type of situations contemplated by Rule 35. (Mot. Exam 3.) Defendants also reiterate their
13 position from the motion to reopen discovery that Plaintiffs' repeated delay in releasing the
14 medical authorization form resulted in limiting Defendants' ability to question Plaintiff Mr.
15 Morelos on the claim during a deposition, and to confer with expert witnesses before the
16 deposition. Following obtaining the medical records and a deposition of the therapist Mr. Bruce,
17 Defendants contend the PTSD diagnosis is "highly questionable" and an independent
18 examination is required to accurately assess disputed issues regarding Mr. Morelos' injuries and
19 damages. (Mot. 3, 5.) Defendants state they are requesting a standard mental examination
20 which will "consist of all necessary and customary activities, including a history of the incident
21 in question as it pertains to the alleged injuries, a history of the ailments relating to the claims of
22 the lawsuit, and mental examination and evaluation." (Mot. 5.) Defendants state the exam will
23 be recorded stenographically and by audio only, and there will be no diagnostic test that is
24 painful, protracted or intrusive. (Id.) Defendants note that the exam will be conducted by Mark
25 H. Strassberg, M.D., who has been in private practice in psychiatry since 1991 and is board
26 certified in psychiatry and neurology by the American Board of Psychiatry and Neurology.
27 (Mot. 6.)

28 Similar to the question of relevancy discussed above, Plaintiffs have not argued that if

Defendants had requested the mental exam prior to the close of discovery, it would not have been proper or not supported by good cause. Rather, their opposition to the collective motions focused entirely on the propriety of reopening of discovery, and Plaintiffs have not clearly argued there is not good cause to conduct the independent examination itself.

The Court notes that Dr. Strassberg, whose Rule 26 report failed to issue any opinion without performing an independent mental examination, specifically states:

> I have been asked to evaluate plaintiff, Jedidiah Morelos' claim of PTSD, emotional distress as well as the care he was provided by Mr. Bruce. In order to render opinions, I need to examine and evaluate Mr. Morelos in person.
>
> It is my understanding that the defendants intend to petition the court for leave to allow me to perform an Independent Medical Examination ("IME") of plaintiff Jedidiah Morelos. As such, I cannot offer my complete opinions in this case until such time as I am afforded the opportunity to complete the aforementioned IME.

(Mot. Exam 16.)

Based on the all of the facts and arguments presented, the Court finds good cause to order the independent mental examination of Plaintiff Jedidiah Morelos to be conducted by Dr. Strassberg. The complaint contains a claim for negligent infliction of emotional distress (ECF No. 50 at 17), Plaintiff Mr. Morelos is alleging the specific mental or psychiatric injury of PTSD, and Plaintiff is claiming ongoing emotional distress. See Gavin, 291 F.R.D. at 164; Barsamian, 2008 WL 2168982, at *2. The Court shall order Plaintiff Jedidiah Morelos to appear for a mental examination before Mark H. Strassberg, M.D., to perform the examination on January 3, 2020 at 11:00 a.m. at the offices of Al Cala & Associates, 1601 I Street, Suite 410, Modesto, California 95354. The examination shall encompass only those aspects considered necessary and customary by Dr. Strassberg, for evaluating the mental condition of Plaintiff Mr. Morelos as it pertains to the alleged injuries, and the history of the ailments relating to the claims of the lawsuit. See Fed. R. Civ. P. 35(a)(2)(B) (an order requiring an exam "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.")[11]

---

[11] If Plaintiff Mr. Morelos is unavailable on this date, the parties are encouraged to agree to a similar workable date through meet and confer.

### H. Plaintiffs' Objections and Motion to Strike

On December 12, 2019. after the close of the briefing period set by the Court, Plaintiffs filed objections and a "counter-motion to strike Defendants' motions for violations of Local Rule 251 and the scheduling order." (Mot. Strike, ECF No. 52.) On December 16, 2019, Defendants filed a reply to Plaintiffs' objections and counter-motion to strike. (Reply Mot. Strike, ECF No. 53.)

Plaintiffs argue that Defendants' requests for Plaintiffs to participate in drafting a joint statement regarding this discovery dispute were premature and in contradiction of the Local Rules. On November 20, 2019, Defendants sent an email requesting Plaintiffs to send their respective portion of the joint statement in two days, so that the joint statement could be filed concurrently with the filing of the motion to reopen discovery. (Mot. Strike 2.) Plaintiffs responded that they would not provide the joint statement "yet," nor would they permit Defendants to file a joint statement without their input, and Plaintiffs requested the word document be sent over so that Plaintiffs could complete it in a reasonable time before it was due. (Id.) Plaintiffs state Defendants never replied to this email but instead, on November 25, 2019, emailed Plaintiffs stating their intent to file the *ex parte* motion to shorten time, but did not ask for a stipulation or offer proposed dates in violation of Local Rule 144(e).[12] (Id.) Plaintiffs also contend Defendants violated the Local Rules by filing their reply briefing on December 11, 2019, but not filing a joint statement or an affidavit explaining why a joint statement was not completed. (Id. at 3.)

---

[12] The Local Rules state: "Applications to shorten time shall set forth by affidavit of counsel the circumstances claimed to justify the issuance of an order shortening time. Ex Parte applications to shorten time will not be granted except upon affidavit of counsel showing a satisfactory explanation for the need for the issuance of such an order and for the failure of counsel to obtain a stipulation for the issuance of such an order from other counsel or parties in the action." L.R. 144(e). While Plaintiffs are correct that Defendants' email only notified Plaintiffs of their intent to file the *ex parte* motion, and could have further conferred for a stipulation, Defendants' *ex parte* application and affidavit sufficiently explained and extensively laid out the course and conduct between the parties relating to the entire discovery dispute, and the Court found good cause to grant the *ex parte* application and set a briefing schedule. (ECF No. 44.) Plaintiffs do not contend that they responded to Defendants' communication notifying them of their intent to file an *ex parte* application stating they would or would not agree to a stipulation. As to Plaintiffs' argument that Defendants failed to provide proposed dates in violation of Local Rule 144(e), the rule only provides: "Any proposed order shortening time shall include blanks for the Court to designate a time and date for the hearing and for the filing of any response to the motion." L.R. 144(e). Defendants did comply with this requirement by providing a proposed order with blank dates for the Court to fill in (ECF No. 44-1 at 1-2), and Local Rule 144(e) does not require the proposed dates to be sent to opposing counsel.

Defendants first respond that Plaintiffs' objections and motion to strike violate Local Rule 230(e) which provides: "Any counter-motion or other motion that a party may desire to make that is related to the general subject matter of the original motion shall be served and filed in the manner and on the date prescribed for the filing of opposition." (Reply Mot. Strike 2.) Defendants argue they did comply with Local Rule 251 because counsel did request Plaintiffs' portion and specifically wrote he would "add [Plaintiffs'] information to the joint statement for [Plaintiffs' counsel's] approval." (Id. at 2-3; ECF No. 46 at 54.) Defendants state Plaintiffs' characterizations are inaccurate, and the request was made in an expedited fashion because, as they told Plaintiffs, "time was of the essence" to place the discovery dispute before the Court because "Plaintiffs had already made it abundantly clear that informal resolution of the dispute was out of the question." (Reply Mot. Strike 3.) Defendants also argue their discovery motion complied with Local Rule 251(d) because their motion's affidavit explaining the efforts to initially obtain the joint statement and the details surrounding communications relating to the remainder of the discovery dispute. (Id. 3-4.)

Whether or not the Defendants' framing of the initial request to draft a joint statement may have been premature, and while the Court agrees that the joint statement generally aids the parties and the Court in narrowing the factual and legal issues for adjudication, the Court finds the requirement for a joint statement was rendered moot by the Court's November 26, 2019 order granting Defendants' *ex parte* application which set explicit deadlines for the filing of an opposition and reply briefing, in lieu of a joint statement. See L.R. 102(d) ("Unless contrary to law, the Court in its discretion may make such orders supplementary or contrary to the provisions of these Rules as it may deem appropriate and in the interests of justice and case management under Fed. R. Civ. P. 16 or Fed. R. Crim. P. 17.1 in a special circumstance."). Further, the Court's scheduling order in this matter also provides that "[i]n scheduling any non-dispositive motion, the Magistrate Judge may grant Applications for an Order Shortening Time pursuant to Local Rule 144(e). However, if counsel does not obtain an Order Shortening Time, the Notice of Motion must comply with Local Rule 251." (ECF No. 21 at 4.) If the Court had not ordered such explicit briefing schedule, Defendants would have still had time to confer and file a

joint statement even if their initial request was premature. Further, if Defendants had violated the Local Rules, "refusal without good cause to execute the required joint statement, shall be grounds, <u>in the discretion of the Court</u>, for entry of an order adverse to the party represented by counsel so refusing or adverse to counsel." L.R. 251(d) (emphasis added). Given the Court's order setting the briefing schedule, the Court finds good cause for any failure to file one.

Accordingly, Plaintiffs' motion to strike shall be denied, and Plaintiffs' objections shall be overruled.

## V.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to reopen discovery and motion for order requiring Plaintiff Jedidiah Morelos to appear for mental examination (ECF Nos. 46, 47) are GRANTED;

2. Plaintiff Jedidiah Morelos shall be required to appear for a mental examination before Mark H. Strassberg, M.D., to perform an examination as necessary to evaluate the mental condition of Plaintiff Mr. Morelos as it pertains to the alleged injuries, and the history of the ailments relating to the claims of this lawsuit, on January 3, 2020 at 11:00 a.m. at the offices of Al Cala & Associates, 1601 I Street, Suite 410, Modesto, California 95354, or on a similar date and time agreed to through meet and confer of counsel;

3. Plaintiffs' objections filed December 12, 2019 (ECF No. 52), are OVERRULED;

4. Plaintiffs' motion to strike (ECF No. 52), is DENIED;

5. The hearing set for December 18, 2019 is VACATED and the parties need not appear on that date; and

///
///
///
///

6.      The Clerk of the Court is directed to change the name of Plaintiff J.M. to Jedidiah Morelos and remove the reference to a guardian ad litem on the docket to reflect the second amended complaint filed on December 10, 2019 (ECF No. 50).

IT IS SO ORDERED.

Dated:   **December 17, 2019**

_____
UNITED STATES MAGISTRATE JUDGE