**JOHN L. BURRIS, Esq., SBN 69888**
**BEN NISENBAUM, Esq., SBN 222173**
**PATRICK M. BUELNA, Esq., SBN 317043**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport St., Suite 1120
Oakland, CA 94621
Telephone:    (510) 839-5200
Facsimile:    (510) 839-3882
Email: John.Burris@johnburrislaw.com
Email: BNisenbaum@gmail.com
Email: Patrick.Buelna@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JEDIDIAH MORELOS, an individual; NORA MORELOS, an individual; and YAKIRA MORELOS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br><br> COUNTY OF STANISLAUS, et al. <br><br> Defendants. | Case No.: **1:18-cv-01034-LJO-SAB** <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY ADJUDICATION AGAINST DEFENDANT DEPUTIES** <br><br> Date: January 29, 2019 <br> Time: 8:30 AM <br> Courtroom: 4 <br> Robert E. Coyle United States Courthouse <br> 2500 Tulare Street, Seventh Floor <br> Fresno, CA 93721 <br><br> **HON. LAWRENCE J. O'NEIL** <br><br> **UNITED STATES DISTRICT JUDGE** |

## PLAINTIFF'S NOTICE OF MOTION FOR PARTIAL SUMMARY ADJUCATIONS AGAINST DEFENDANTS

**PLEASE TAKE NOTICE** that on January 29, 2020 at 8:30 A.M., or as soon as this matter may be heard by U.S. District Court Judge Lawrence J. O'Neill, in the United State District Court, Eastern District, Fresno Courthouse, 2500 Tulare Street, Seventh Floor, Fresno, California, Plaintiffs Jedidiah Morelos, Nora Morelos and Yakira Morelos will move for an order of partial adjudication for Plaintiffs' Fourteen Amendment Claim pursuant to Federal Rules of Civil Procedure Rule 56.

PLEASE TAKE NOTICE that the parties met and conferred in good faith in regards to the filing of this Rule 56 Motion in accordance with the Court's Scheduling Order. (Doc. 21, p. 5).

## I.      INTRODUCTION

Plaintiffs move for partial summary adjudication on Jedidiah Morelos Fourteenth Amendment Due Process Claim, because it is undisputed that Defendants beat 17-year-old, unarmed Jedidiah with batons, shot him with bean bags and pepper sprayed him in response to a medical emergency. Defendants admittedly used this potentially deadly force against Plaintiff, then the supervisor on-scene, Defendant Sgt. Sandoval, ordered emergency medical personnel to leave before they could treat Plaintiff placing him in a more dangerous situation than they had found Plaintiff in violation of the Due Process Clause. As such, the Court should find as a matter of law that Defendants are liable and this Due Process claim should proceed to the jury solely for the purposes of damages. *See Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 2004) (affirming and upholding a district court's summary judgment decision in favor of plaintiff as to a defendant officer's liability for false arrest).

## II.      PROCEDURAL HISTORY

On December 9, 2019, the parties conducted a meet and confer in regards to Plaintiff's Motion for Partial Summary Judgment in accordance with the Court's Scheduling Order. (Doc. 21, p. 5). Plaintiffs emailed the word document of the Joint Statement of Facts on December 18, 2019 for Defendants to include their disputes and stipulations in order to begin the process of creating the Joint Statement of Undisputed Facts. (Buelna Decl.**,** ¶ 11). The Joint Statement of Undisputed Facts will be filed with Plaintiff's Reply once Defendants return the word document. (Id.)

## III.      FACTUAL HISTORY

On March 4, 2018, Stanislaus firefighters responded to a medical emergency for a teenage boy, Plaintiff Jedidiah Morelos, who had taken acid at his parents' home. ((Declaration of Patrick Buelna "Buelna Decl.", ¶ 2, Exhibit 1 – Firefighter Records).  Jedidiah's parents called 9-1-1 after Jedidiah woke his mother, Plaintiff Nora Morelos, told them he had taken acid, and was worried his soul was going to be taken. (Buelna Decl.**,** ¶ 3, Exhibit 2 – Deposition of Nora Morelos "Nora Depo", pp. 45-

46). Nora brought him to his room and read him the Bible. (Id.) Jedidiah took the Bible and began reading it loudly. (Id.) Meanwhile, his sister, Yakira, escorted their younger sibling out of the house. (Id.)

Firefighters, including Fire Captain Greunke, were dispatched to the house for the medical call for emergency and the incidentwere not even dispatched. (Buelna Decl., ¶ 4, Exhibit 3 – Deposition of Fire Captain Marty Greunke "Greunke Depo", pp. 25-26). Jedidiah's parents explained to firefighters that their son had used drugs, was not acting like himself and needed their help. (Greunke Depo, 26-27).

The firefighters opened the Jedidiah's bedroom door and found him standing on his bed, wearing shorts and nothing else, and praying to his ceiling fan. (Buelna Decl., ¶ 5, Exhibit 4 – Deposition of Firefighter Tony Anderson "Anderson Depo", p. 16). Jedidiah told the firefighters to, "Get out!". (Anderson Depo, pp. 16-17). Firefighter Anderson estimated Jedidiah to be approximately 5'6" and 150 pounds. (Anderson Depo, p. 18).

Captain Greunke made the decision for the firefighters to back out of the room and call for law enforcement. (Id.) Firefighters returned upstairs with the deputies where they witnessed Jedidiah holding a pencil to his chest and threatening to stab himself. (Anderson Depo, pp. 18-19). Deputies used pepper spray on Jedidiah and the firefighters backed out of the house. (Greunke Depo, pp. 46-47).

Defendant Deputies Chad Lewis and Brent Slayer were the first to respond of law enforcement. (Buelna Decl., ¶ 6, Exhibit 5 – Incident Reports: Salyer, p. 4). Defendant Salyer alleged Jedidiah jumped off his bed and walked towards deputies with a pencil at his waist. (Id. at pp. 4-5). Defendant Salyer pepper sprayed him and Jedidiah jumped back on his bed stabbing himself. (Id.) Defendant Lewis also deployed his pepper spray afterwards. (Incident Reports: Lewis, p. 11).

Defendant Derek Crowley arrived with a bean bag gun and deployed it. (Incident Reports at p. 5). Defendant Crowley explained that he used the bean bag gun because Plaintiff Jedidiah was standing in his room with his hands at his sides yelling at deputes and ignoring their orders to come out of the room. (Buelna Decl., ¶ 7, Exhibit 6 – Deposition of Derek Crowley "Crowley Depo", pp. 108-109). Defendant Crowley did not see anything in Plaintiff's hands when he fired his bean bag gun. (Id.) Defendant Crowley shot Plaintiff with the bean bag gun six times, while Plaintiff simply stood still in the room unarmed. (Id. at pp. 109-110).

Afterwards, Plaintiff remained standing the middle of the room with his fists at his side. (Id. at pp. 110-111). Then Plaintiff exited the room unarmed and Defendants struck him with batons. (Id. at 114-115). Defendant Salyer struck Plaintiff on his upper torso with his baton approximately five (5) times. (Incident Reports: Salyer, p. 5). Defendant Lewis struck Plaintiff with double-handed baton strikes several times. (Incident Reports: Lewis pp. 11-12). Defendant Crowley struck Plaintiff with his baton once in the knee. (Incident Reports: Crowley, p. 27). Plaintiff re-entered his room and the Defendants waited outside. (Id.)

Defendant Sergeant Sandoval arrived on-scene and decided to leave Plaintiff alone in the room and exit the house. (Id.) Sgt. Sandoval explained that the deputies briefed him on what had occurred and their uses of force. (Buelna Decl., ¶ 8, Exhibit 7 – Deposition of Joshua Sandoval "Sandoval Depo", pp. 26-27). Deputies informed Defendant Sandoval that they had used a bean bag on Jedidiah 4-5 times. (Id.) Defendant Sandoval was trained that the bean bag gun can inflict great bodily injury. (Id.) Defendant Sandoval also knew that Jedidiah had been struck at least four to five times with a baton. (Sandoval Depo, pp. 30-31). Defendant Sandoval was trained that a person subjected to force should be provided after-force medical care. (Id.) Defendant Sandoval also knew that firefighters and paramedics were on-scene but ordered them to leave. (Id.) Defendant Sandoval explained he told all

3

law enforcement and medical personnel to leave because he was afraid that deputies would shoot Plaintiff Jedidiah. (Sandoval Depo, pp. 30-37).

Defendant Sandoval did not inform the emergency medical personnel of the force used against Jedidiah at all. (Id. at pp. 31-32). Defendant Sandoval did not actually check to see if Jedidiah was medically and/or physically safe after the uses of force. (Id.) Defendant Sandoval testified that he thought Jedidiah was medically safe because he could hear Jedidiah moving around. (Id. at pp. 32-37). Fire Captain Greunke explained emergency medical personnel had not been informed that Jedidiah was injured. (Greunke Depo, p. 85). Capt. Greunke testified that emergency medical personnel would have treated Jedidiah's injuries but they relied on the law enforcement's decision-making and information. (Greunke Depo, p. 138-139).

After deputies and medical personnel left, Nora immediately checked on her son, Plaintiff Jedidiah, who was in bad shape, and attempted to take him to the hospital. (Nora Depo, pp. 86-87). However, Jedidiah was traumatized from the beating and would not agree to be transported to the hospital for approximately 3-4 hours. (Nora Depo, pp. 86-87, 90-91). Plaintiffs Yakira and Nora Morelos took pictures of Jedidiah's injuries which showed him covered in bruises and swelling from the uses of force. (Buelna Decl., ¶ 9, Exhibit 8 – Photographs of Plaintiff Jedidiah's Injuries).

At Emanuel Medical Center, Emergency Department Doctor Moharir determined that Jedidiah was suffering from pneumomediastinum and subcutaneous crepitus which required a facility, such as UC Davis, to perform exploratory surgery. (Buelna Decl., ¶ 10, Exhibit 9 – Emanuel Medical Records). Dr. Moharir suspected that Plaintiff had suffered a hole in his esophagus due to deputies' blunt force or failure to treat him for pepper spray effects. (Id.) At UC Davis, doctors performed an exploratory surgery, did not discover the perforation but kept Plaintiff for a couple days while he healed from a potentially deadly condition.

### III.    LEGAL ANALYSIS

Rule 56 states summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. §56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to return a verdict for the nonmoving party. *Id*. at pp. 248-249.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex,* 477 U.S. at 323 (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

"[A]t this stage of the litigation, the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are

within the province of the factfinder at trial." *Nelson v. City of Davis*, 571 F.3d 924, 928-929 (9th Cir. 2009). Moreover, the court is required to draw all inferences in a light most favorable to the non-moving party. *Id.* The court should not grant summary judgment where there are undisputed facts which reasonably lend themselves to different inferences. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir. 1981). The court must evaluate the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit "a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy." *O.S.C. Corp. v. Apple Computer, Inc.,* 792 F.2d 1464, 1466-1467 (9th Cir. 1986), quoting *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 681 (9th Cir. 1985).

**A.  THE COURT SHOULD GRANT PARTIAL SUMMARY ADJUDICATION ON PLAINTIFFS' FOURTEENTH AMENDMENT**

**1.  Defendants Violated Plaintiff's Due Process Rights Because They Left Plaintiff in a Position More Dangerous Than Which They Found Him**

The Fourteenth Amendment's due process clause guarantees the right to "bodily security." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir.2006). As of December 2006, it was well-established in this circuit that a Fourteenth Amendment violation occurs where officers "affirmatively place[] the [person] in a position of danger." *Maxwell v. County of San Diego,* 708 F.3d 1075, 1082 (9th Cir. 2013) (quoting *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir.1989) (internal quotation marks omitted)). Officers affirmatively place a person in danger by leaving him "in a situation that [is] more dangerous than the one in which they found him." *Munger v. City of Glasgow IncidentDep't,* 227 F.3d 1082, 1086 (9th Cir.2000). "Impeding access to medical care amounts to leaving a victim in a more dangerous situation." *Maxwell v. County of San Diego,* 708

6

F.3d 1075, 1082 (9th Cir. 2013) (citing *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir.1997)).

Here, it is uncontested that the on-scene supervisor, Defendant Sgt. Sandoval, knew that deputies had shot Plaintiff Jedidiah with bean bag guns, pepper sprayed him and struck him with a baton several times. Nevertheless, Sgt. Sandoval did not inform emergency medical personnel of the force used against Plaintiff. Sgt. Sandoval admitted that he was trained that less lethal weapons can cause death, which is one reason a subject should be checked out medically for after-force care. Sgt. Sandoval did not go upstairs and check on Plaintiff to see if he was okay, or see him at all. Sgt. Sandoval decided Plaintiff did not need medical attention on the basis that he could hear Plaintiff moving and yelling upstairs. On this basis, Sgt. Sandoval ordered deputies and emergency medical personnel to leave without treating him.

Therefore, it is indisputable that (1) deputies uses of force was significant and seriously injured plaintiff leaving him in a more dangerous situation than which they found him; and (2) that Sgt. Sandoval knew of the damage done to Plaintiff, did not inform emergency medical personnel that he was hurt and prevented them from attending Plaintiff's injuries by ordering emergency medical personnel to leave. Defendant Sandoval and his fellow deputies decisions to prevent after-force medical care amounts to a violation of Plaintiff's Due Process rights that exposed Plaintiff to a danger they recognized and ignored.

The County's own departmental policy states that deputies are required to continuously monitor a subject of force until he/she can be medically assessed. (Buelna Decl., ¶ 12, Exhibit 10 – Stanislaus Sheriff Department Use of Force Policy – 300.6 Medical Consideration). In particular, a supervisor – such as Defendant Sgt. Sandoval – must: "Ensure any injured parties are examined and treated"; and, "Ensure that photographs have been taken of any areas involving visible injury or complaint of pain".

7

(Id. at 300.7 – Supervisor Responsibility). It remains undisputed neither of these requirements were met here. Furthermore, courts have consistently held defendants potentially liable for misconduct much less heinous than here.

In *Maxwell*, deputies responded to a shooting where the gunshot wound victim and suspect were still on-scene. *Maxwell,* 708 F.3d 1075, 1080-81. Emergency medical personal also responded and placed the victim in an ambulance. (Id.) However, Defendant deputies refused to allow the ambulance to leave for the hospital for approximately 5-10 minutes. (Id.) The victim died *en route* to the hospital. (Id.) Although there was only a short delay in permitting the ambulance to leave, the Ninth Circuit held that there was sufficient evidence to find that the deputies had affirmatively increased the danger by preventing the ambulance to leave. (Id. at 1082).

Much worse here, based on the undisputed facts, Defendants knew that Plaintiff was significantly injured as a result of their force, were *trained* to alleviate the dangers of their uses of force by ensuring medical attention to the victims, Defendants knew emergency medical personnel were waiting outside to attend Plaintiff, and not a single Defendant informed emergency medical personnel that force had been used against Plaintiff and *ordered* for emergency medical personnel to leave the scene effectively *preventing* from Plaintiff from access to medical care. It is also undisputed that, as a result of Defendants' order for medical personnel to leave, Plaintiff's family only managed to transport Jedidiah Morelos hours after the incident to the hospital, due to traumatization from the Defendants' uses of force. (cf. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (holding that city had a constitutional obligation to provide medical care to a person injured during an arrest, and that the city satisfied its duty to provide medical care by taking an injured suspect to a hospital)).

It is foreseeable that Defendants will argue that Plaintiff had already placed himself in danger by taking an illicit drug, and that liability would only attach when an official does "more than simply expose the plaintiff to a danger that already existed." *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012). However, here not only did the Defendants fail to alleviate the danger for which they were summoned, they significantly worsened the danger by beating Plaintiff, causing internal injuries and exposing him to significant, possibly deadly consequences – then ordered medical personnel to leave.

Indeed, the Ninth Circuit has repeatedly held the "critical distinction" for finding liability is not "between danger creation and enhancement, but ... between state action and inaction in placing an individual at risk." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018) (quoting *Penilla v. City of Huntington Park*, 115 F.3d 707, 710). Therefore, the ultimate focus for liability under the Fourteenth Amendment is whether "the affirmative actions of [the] official create[d] or expose[d] an individual to a danger which he or she would not have otherwise faced." (quoting *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012)). Here, Defendants not only failed to act but took affirmative actions to prevent Plaintiff from receiving medical care that endangered him. Defendants inarguably exposed Plaintiff to dangers of injuries he would not have faced had deputies permitted paramedics to stay on-scene and provide Plaintiff medical care.

### 2. Defendants Were Deliberately Indifferent to Risks Because They Knew that Plaintiff Was Hurt and Needed Medical Attention But Ordered Medical Personnel to Leave Without Treating Him

In order for Plaintiff to succeed on his due process claim, he must prove that Defendants conduct amounted demonstrated deliberate indifference to recognized the risks of Plaintiff's injuries being left untreated and exposed him to the risks anyhow. *See Hernandez*, 897 F.3d 1125, 1135; *L.W. v. Grubbs*

*(Grubbs II )*, 92 F.3d 894, 898–90 (9th Cir. 1996); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). Here the Defendants participated and/or knew they had seriously injured Plaintiff by hitting him repeatedly with batons, pepper spraying him and shooting him with bean bags they knew caused serious bodily harm. Furthermore, Defendants were specifically trained and, the County had in place policies designed to inform, Defendants of these exact risks and how to alleviate them. Defendants, by their own admission, disregarded those risks and made the deliberate decision to expose Plaintiff to those risks anyhow.

## IV.   CONCLUSION

For the reasons stated above, this Court should grant Plaintiffs' motion for partial adjudication on his Fourteenth Amendment Claim and find Defendants liable under the Fourteenth Amendment for leaving Plaintiff Jedidiah Morelos in a situation more dangerous than they found him.

Dated:  December 18, 2019                        **The Law Offices of John L. Burris**


                                                        /s/ Patrick M. Buelna

                                                Patrick M. Buelna
                                                Attorney for Plaintiff

10